IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDMUND S. GREENE,

    Plaintiff,                            No. CIV S-09-0970 GGH

    vs.

MICHAEL J. ASTRUE,               ORDER
Commissioner of
Social Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

BACKGROUND

        Plaintiff, born June 17, 1956, applied on March 9, 2005 for disability benefits. (Tr. at 67, 38.) Plaintiff alleged he was unable to work due to chronic neck pain. (Tr. at 32.)

\\\\\

\\\\\

1

In a decision dated November 9, 2007, ALJ William L. Stewart, Jr. determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since October 31, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative changes in the cervical spine; and hepatitis C with normal bilirubin and albumin (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to frequently lift up to 10 pounds, and occasionally lift up to 20 pounds, but these weights would be less if held with his arms fully extended in front. He should avoid repetitive bending, twisting, pushing, pulling, and looking up. The claimant has difficulty reaching up more than rarely. He needs an opportunity to change position as needed for comfort. The claimant would have difficulty with repetitive neck motion side-to-side, especially if rapidly performed. The claimant should avoid jarring or jerking movements. He also has difficulty consistently performing ongoing intricate manipulation due to numbness in fingers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on June 17, 1956, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2004, through the date of this decision (20 CFR 404.1520(g)).

(Tr. at 28-37.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Not Finding Plaintiff Disabled under the Grids; B. Whether the ALJ Improperly Rejected Plaintiff's Pain Testimony; and C. Whether the ALJ Relied on an Incomplete Hypothetical to the

3

Vocational Expert, and Improperly Disregarded a Portion of the Expert's Testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS[2]

    A.  Credibility Analysis Was Proper

Plaintiff contends that the ALJ rejected his credibility without a substantial basis.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Vasquez v. Astrue, 547

---

[2] Plaintiff makes several assertions of factual error by the ALJ in interpreting the evidence. Those assertions will be addressed where pertinent to the legal discussion.

4

F.3d 1101 (9th Cir. 2008); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Bunnell at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[3] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom." Vasquez, 547 F.3d at 1104, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d at 1282. Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing, and supported by reference to specific facts in the record. Vasquez, 547 F.3d at 1104-05.

Plaintiff's credibility was properly questioned for the reasons pointed out by the ALJ. He first noted that plaintiff had worked for a full two years, albeit work that did not qualify

---

[3] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

as substantial gainful activity, after he alleged the onset of disability. (Tr. at 30.)  The ALJ also referred to plaintiff's allegations of mental impairment and headaches; however, there was no evidence of treatment or medication. (Id. at 32.)  In fact, the record showed only scant reference to a headache until March, 2006 when he started reporting them occasionally. (Id.)  The ALJ then described plaintiff's daily activities based on plaintiff's own completion of questionnaires, indicating cooking every day, driving every day, shopping twice a week for two hours at a time, helping to make dinner, watching television, feeding the dog, raking leaves, removing yard debris, doing laundry, housecleaning, and household repairs.  Plaintiff had reported that he would do these activities until his pain reached a level "2" and then he would stop until the pain subsided.  The ALJ acknowledged that it was not clear what pain scale plaintiff was referring to, but on any scale a number of 2 would not be considered significantly limiting pain. (Id. at 34.)

Although plaintiff disputes some of these findings, the evidence supports the ALJ's findings regarding plaintiff's activity level.  Plaintiff's function report, although stating that he *helps* his wife with cooking, also states that he prepares his own meals daily and makes sandwiches for lunch. (Tr. at 111.)  This report also states that he goes outside daily, and only drives a car when he goes out, contrary to plaintiff's assertion. (Id. at 112.)  Plaintiff appears to parse words when he disputes the ALJ's finding that he shopped twice a week for two hours at a time.  Plaintiff actually wrote in this report that he shops "twice a week 2 hrs. tops." (Id.)

The ALJ also thoroughly discussed the objective medical evidence.  Plaintiff began to see Dr. Williams in August, 2004, and at that time although he had neck and arm pain with numbness in his hand, he was lifting 25 pounds frequently and 75 pounds occasionally at his work.[4]  Plaintiff did not want to take pain medication because he thought it would cause him to

---

[4] Plaintiff correctly asserts that the ALJ misstated his work, and that his job at an equipment rental center was from 1988 to 1992, and not in 2005. (Tr. at 89.) Nevertheless, plaintiff did state in the same work history report that he lifted up to 75 pounds. (Id. at 90.) If this is true, then he must have lifted it in his only other listed job as pump and watch service journeyman where he worked from 1992 until he stopped working. (Id. at 89.)

6

1  overdo his activity. (Id. at 32.) Plaintiff did not see a doctor for an entire year, from March 2005
2  to March 2006. (Id. at 33.) The ALJ also noted that plaintiff had gone to physical therapy three
3  times which reduced his pain levels; however, he stopped going due to financial reasons. (Id. at
4  32.) The ALJ explained that plaintiff was insured by Medi-Cal since April, 2006 and would have
5  no reason not to return to physical therapy since that time, but had not done so. (Id. at 34.)

6        Plaintiff starting seeing Dr. LaGro in March, 2006 who referred him for
7  neurological evaluation with Dr. Corkill. At this time plaintiff did have Medi-Cal coverage so
8  Dr. Corkill ordered an MRI which showed mild multi-level changes and focal disease, but no
9  evidence of foraminal or central stenosis, contradicting an earlier cervical CT scan which had
10 showed severe stenosis. Dr. Corkill stated that this MRI was considered the "gold standard in
11 imaging," probably in comparison to the CT scan.[5] Dr. Corkill opined that plaintiff's pathology
12 was mild to moderate, and he was planning to order electrodiagnostic testing which appears not
13 to have been done as there are no additional records including any mention of it. (Id. at 33.) The
14 ALJ further noted plaintiff's pain was improved as of June, 2007 such that he needed only
15 occasional over the counter ibuprofen for pain. Although plaintiff started complaining of
16 forearm pain and occasional low back pain, he did not want a prescription offered for a muscle
17 relaxant and there are no further complaints of this type in the record.

18       When plaintiff tested positive for Hepatitis C after a long drinking history,[6] Dr.
19 LaGro wanted to order a liver biopsy but informed plaintiff he would have to stop drinking for
20 one month prior to the biopsy. Plaintiff had not undergone the biopsy as of the time of the
21 hearing. (Id. at 33.) The ALJ also considered the report of Dr. Guthrie, who saw plaintiff one

---

[5] See MRI vs. CT Scan. www.ct-scan-info.com/mrivsctscan.html (spinal cord best seen with MRI).

[6] Plaintiff disputes the ALJ's characterization of plaintiff's past alcohol consumption as "an ongoing history of excessive drinking," which plaintiff claims is nowhere in the record. Plaintiff concedes, however, that there are references to plaintiff's alcohol use in the record. See tr. at 206 ("[plaintiff] states that he drinks occasionally, sometimes up to a 12-pack a day, although not always").

time in September, 2007, and concluded that plaintiff was completely disabled "from his usual gainful employment activities." He also recommended physical therapy, but plaintiff again did not follow this advice. (Id. at 33.) Based on these records, the ALJ thought that the findings were mild to moderate only, which would preclude him from his past medium to heavy work, but his daily activities showed he could do other work. Finally, the ALJ noted that although several doctors thought that plaintiff was "disabled" from doing his current work, none of them thought that plaintiff was precluded from doing other work. (Id. at 35.)

Plaintiff contends in part that the ALJ may not reject plaintiff's credibility based on a lack of medical support for the severity of his pain. The ALJ is, however, entitled to consider lack of treatment or very conservative treatment. Smolen v. Chater, 80 F.3d at 1284. Furthermore, a condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (rib condition controlled with antibiotics not considered disabling). Plaintiff's pain was controlled with simple Ibuprofen. Plaintiff declined a prescription for muscle relaxant and more serious pain medication, (tr. at 203, 205, 226), and did not undergo physical therapy as recommended, despite later insurance coverage. (Tr. at 175, 177, 162, 227, 243.) Regardless of claims of headaches and anxiety, plaintiff did not receive treatment or therapy for these conditions, and plaintiff's headaches were only occasional. (Tr. at 230.) Moreover, according to the records, plaintiff received no medical treatment whatsoever for one year from March 2005 to March 2006. In fact, plaintiff reported to Dr. Williams and Dr. Guthrie that he had no other physical problems, aside from his neck and arm pain. (Tr. at 177, 243.) Plaintiff's failure to stop drinking for one month in order to get a liver biopsy, despite a strong recommendation, also indicates his lack of willingness to get treatment for his problems. (Tr. at 224.)

Regulation 20 C.F.R. § 404.930(a) provides that in order to receive benefits, prescribed treatment must be followed "if this treatment can restore your ability to work."

8

20 C.F.R. § 404.1530 provides:

> *(b) When you do not follow prescribed treatment.* If you do not follow the prescribed treatment without a good reason, we will not find you disabled ...

Under such circumstances, the Ninth Circuit has outlined several factors for consideration in determining whether a claimant's failure to follow treatment is justifiable. Nichols v. Califano, 556 F.2d 931 (9th Cir. 1977) (interpreting prior 20 C.F.R. § 404.1507, predecessor to the regulation here at issue). The court should consider the physician's opinion on the likely success of the treatment; the type of relationship between the physician and plaintiff (i.e., if a trusted family doctor recommends against the proposed treatment, the plaintiff's decision not to undergo it may be more reasonable); how dangerous or painful the treatment might be; the severity of the ailment; and the plaintiff's age, background, and medical history.

Here, although Dr. Corkill recommended surgery and plaintiff was apparently willing,[7] there is no record that plaintiff underwent the prerequisite electrodiagnostic testing that Dr. Corkill indicated he would order, and there was no further record of discussion of surgery. (Id. at 202, 207.) Although surgery is certainly riskier than medication and physical therapy, there is certainly no reason why plaintiff would refuse more serious pain medications that would have helped him get through physical therapy. Furthermore, although plaintiff originally may have had financial considerations for not going through physical therapy, as of April 2006, he had no excuse to decline this treatment. Numerous medical sources recommended physical therapy, including treating sources. (Tr. at 177, 162, 227, 243.) Although physical therapy may not have been prescribed in 2006, in part because plaintiff had no medical treatment whatsoever from March, 2005 to March, 2006, this treatment was recommended in August and December, 2004. (Id. at 177, 162.) The fact that Dr. Corkill did not recommend physical therapy does not affect the ALJ's reliance on other doctor recommendations in this regard. An ALJ may properly

---

[7] Plaintiff testified that he was afraid of surgery; however, this is only one factor in the analysis. See n. 7.

rely upon only selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Because a physical therapist and treating Drs. Williams, LaGro, and Guthrie all recommended physical therapy, it was proper for the ALJ to rely on their opinions on this subject. (Tr. at 162, 175, 227.)

Any argument that plaintiff was not taking medication because he could not afford it is inapposite. Social Security Ruling 82-59[8] "only appl[ies] to claimants who would otherwise

---

[8] SSR 82-59 provides in relevant part (emphasis added):

Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, <u>unless there is a justifiable cause for the failure to follow such treatment</u> ...

The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R. § 404.1530 under Title II) similarly provides:

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for declining to following prescribed treatment, none of which are present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for declining to following prescribed treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
(4) The treatment because of the enormity (e.g. open heart surgery), unusual nature (e.g. organ transplant), or other reason is very risky for you; or

10

be disabled within the meaning of the Act." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). The ALJ made a specific finding that plaintiff was not disabled without regard to his failure to seek treatment.

Plaintiff next contends that the ALJ did not identify specific chores and explain the extent to which plaintiff could persist in them such that they would evidence transferability to a work setting. The ALJ did outline the chores plaintiff stated he could do. (Id. at 109-14.) He also pointed out that plaintiff stopped doing these activities when his pain reached a level of only 2 which indicates that he could have continued doing the activities at a slightly higher pain level without reaching a severe level of pain.[9] The ALJ was entitled to consider the various activities performed by plaintiff to determine he could do some kind of work.

As plaintiff's arguments are unpersuasive, the undersigned finds that the ALJ's reasons to discount his credibility are supported by substantial evidence.

B. ALJ's Use of the Grids

Plaintiff asserts that the ALJ should have applied Rule 201.14 of the grids concerning sedentary work to find plaintiff disabled. In the alternative, the ALJ should have relied on the portion of the vocational expert's testimony responding to the hypothetical that if plaintiff had loss of feeling in the fingers such that he could do no fingering or handling, plaintiff could not do sedentary work, and therefore could not work.

---

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

Additional acceptable reasons for declining to following prescribed treatment set forth in SSR 82-59 are:

(1) Fear of surgery;
(2) Inability to pay for prescribed treatment;
(3) A medical source has advised against the treatment.

[9] Although the ALJ acknowledged that he did not know on what scale this pain level was, Dr. Corkill's records indicate that plaintiff was aware of the 1 to 10 scale as he rated his pain at 5-6 out of 1 to 10 on one visit. (Tr. at 204.)

11

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[10] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

In this case, the ALJ concluded that plaintiff was not disabled at step five of the analysis because although he could not do his past work as a pump repairer or water well driller,

---

[10] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

he could do unskilled light work with certain limitations, based on the grids as a framework for decisionmaking. (Tr. at 35.) These limitations, as posed in a hypothetical to the vocational expert, were that although plaintiff could lift ten pounds frequently and twenty pounds occasionally, he could not lift this much if he had to hold the item with his arms fully extended in front. (Tr. at 266.) Plaintiff would have to avoid repetitive bending, twisting, pushing, pulling or looking up. He could only reach up rarely. He needed to be able to change positions. He would have difficulty with repetitive neck motion, side to side, especially if done rapidly. He should avoid jarring or jerking. He could not consistently perform on-going intricate manipulation. His fingers go numb so he cannot feel. (Tr. at 266.)

It is clear that all of these exertional and non-exertional limitations, taken together are significant enough to require departure from the grids and use of vocational testimony. The vocational expert testified that with these limitations, plaintiff could do the jobs of ticket seller, information clerk or clerical dispatcher. (Id. at 266-67.) The ALJ noted that if plaintiff did not have the aforementioned limitations and could do the full range of light work, he would be found not disabled under Rule 202.21 of the grids.

Plaintiff contends that the ALJ should have used Rule 201.14 of the grids based on sedentary work. As plaintiff was closely approaching advanced age,[11] and had no transferable skills, he would be found disabled under this Rule. The question then, is whether the light work grids or the sedentary work grids should apply as a framework. 20 CFR Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) provides in part:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's *maximum* residual strength capabilities, age, education, and work experience provide a framework for

---

[11] Plaintiff turned 50 in 2006, so Rules 202.14 (for light work) and 201.14 (for sedentary work) apply.

13

> consideration of how much the individual's work capability is
> further diminished in terms of any types of jobs that would be
> contraindicated by the non-exertional limitations.

(Id.) (emphasis added).

Under this directive, the grids for light work must be used as a framework because they more accurately reflect plaintiff's *maximum* residual strength capabilities. It is readily apparent that the light work grids are the proper ones because even with all the aforementioned limitations, the vocational expert was able to determine specific jobs plaintiff could do; whereas the sedentary work grids would have resulted in a finding of disability without regard to any non-exertional limitations. Furthermore, plaintiff would have a much more difficult time doing sedentary work because it requires fine movements of small objects. SSR 85-15, 1985 WL 56857 at *2. "'Fingering' involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs." Id. at *7. Light work, in contrast, usually does not require use of the fingers for fine activities to the same extent. SSR 83-10. Based on plaintiff's need to avoid ongoing intricate manipulation, light work is much more suited to his needs. In fact, the vocational expert testified that with limited use of his hands, plaintiff could not do sedentary work. (Tr. at 270.)

Plaintiff also asserts that he cannot do the full range of light work because he must avoid pushing and pulling and can only reach up rarely. For this reason, he asserts, Rule 202.14 could not apply. The hypothetical posed by the ALJ incorporated these limitations. (Tr. at 266.)

Plaintiff refers to SSR 83-12, a rule applicable to claimants with only exertional limitations, to argue that if someone's exertional level falls between two rules which direct opposite conclusions, and the exertional capacity is significantly reduced, the occupational base for the lower rule could justify a finding of disabled. Defendant is correct that this rule is not applicable – plaintiff has both exertional and non-exertional limitations.

Plaintiff also concedes that:

> c. In situations where the rules would direct different conclusions,

14

> and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253 at *3. "Where a person cannot be found disabled based on strength limitations alone, the rule(s) which corresponds to the person's vocational profile and maximum sustained exertional work capability (Table No. 1, 2, or 3) will be the *starting point* to evaluate what the person can still do functionally." SSR 83-14, 1983 WL 31254 at *3 (emphasis added). As plaintiff's exertional limitations corresponded to the light work category based on his vocational profile and maximum sustained exertional ability, the ALJ properly used Table 2 as a framework, and properly sought guidance from a vocational expert based on plaintiff's strength limitation and numerous non-exertional limitations.[12]

### C. Hypothetical to the Vocational Expert

Plaintiff's final argument is that the ALJ erred in finding that plaintiff could frequently lift up to ten pounds, and did not include plaintiff's assertion that he could only sit for ten minutes before needing a break. In his reply, plaintiff complains that when the vocational expert was asked whether, if plaintiff could not handle and finger, was limited to lifting ten pounds, and needed to take breaks every ten minutes, she testified that plaintiff could not do sedentary work and this combination "would eliminate potential for gainful employment." (Tr. at 270.)

Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir.1997). If a hypothetical does not reflect all the functional limitations, the

---

[12] Plaintiff's argument that his non-exertional limitations require a finding of disabled even if a vocational expert is used, will be addressed in the next section.

expert's testimony as to available jobs in the national economy has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). But see Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical which ultimately serves as the basis for the ALJ's determination. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).[13]

        Plaintiff urges the court to consider plaintiff's own testimony that when reaching for binders weighing only five or six pounds, he experienced exacerbation of pain. As the court found the ALJ's reliance on certain opinions and rejection of plaintiff's subjective testimony was proper, he was not required to include limitations reflected by that rejected evidence in his hypothetical. Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001).

        Plaintiff argues that he could only sit for ten minutes and needed "self-programmed breaks," and the hypothetical should have included these limitations. It is true that Dr. Corkill found that plaintiff needed to take breaks from sitting as needed, (tr. at 204); however, it was plaintiff who reported he could only sit for ten minutes, (tr. at 205), and his credibility has been properly questioned by the ALJ. Furthermore, even if Dr. Corkill made this finding based on his own assessment, the ALJ was entitled to rely on selected portions of this physician's opinion while rejecting other parts. See Magallanes, 881 F.2d at 753.

        Furthermore, the ALJ explained how the vocational expert was able to respond to plaintiff's counsel's most limited hypothetical. If plaintiff needed to change position every ten

---

[13] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not. Id. at 756-757.

1 minutes, plaintiff would have to wear a headset for the dispatcher and information clerk jobs,
2 which would only reduce the numbers of available jobs by 25 percent. (Tr. at 36, 269.)  In regard
3 to a potential limit on lifting ten pounds or less and therefore being limited to sedentary work, as
4 posited by plaintiff's counsel, the vocational expert testified that "normally the requirement to
5 stand and/or walk for more than two hours per eight-hour workday would place a job in the light
6 classification even if the lifting/carrying requirements were in the sedentary range." (Id. at 36,
7 270-71.)

        The ALJ satisfactorily addressed plaintiff's limitations based on the hypothetical that reflected the evidence of record.

CONCLUSION

        The court finds the ALJ's assessment is supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 08/03/2010

        /s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076/Greene0970.ss.wpd